## Commonwealth v. Phillips

*Howard R. Berninger*, District Attorney, for Commonwealth.

*Nickolas B. Piazza*, for defendant.

KREISHER, P. J., February 23, 1962.—This case comes before the court by way of an appeal from a summary conviction before a justice of the peace for violation of the game laws of Pennsylvania which make it illegal to hunt without a hunting license. A hearing de novo was held on February 5, 1962, in open court. The testimony has now been transcribed and filed, and the case is before us for disposition.

The district game protector and prosecutor testified on behalf of the Commonwealth that while on patrol in Benton Township, this county, on December 16, 1961, at about 2 p.m., which, incidentally, was the last day for hunting antlered deer in Pennsylvania, he observed

defendant and another young boy alight from a truck parked in the middle of a field belonging to defendant's father, that defendant had in his possession a deer rifle, and that while a party of deer hunters were making a drive for deer through an adjoining woodland, defendant appeared to be watching for deer and in the act of hunting.

At the conclusion of the drive, the prosecutor started walking toward the truck. However, when he got near it, defendant ordered him off the property, and even threatened him with the gun which required the prosecutor to leave the premises without making an arrest on view, but resulted in this subsequent prosecution.

The defense, as testified to by defendant and his corroborating witnesses who were the young hunter with him and defendant's father, is that he was on the farm premises of his father for the purpose of keeping trespassers off his father's land with instructions that, in the event the trespassers failed to obey the warnings, to shoot at their feet to make certain they would leave. Therefore, it is the contention of counsel for defendant that defendant was not hunting, and that he was justified, under the law, to carry a gun upon his father's premises for the purposes stated.

Defendant admits that his hunting license privilege has been suspended, and, therefore, he had no Pennsylvania hunting license at the time of the alleged offense.

An amendment to the game laws, Act of June 14, 1957, P.L. 307, sec. 317, 34 PS §1311.317, provides:

"Unless the right to procure a license or to hunt or trap anywhere within the Commonwealth has been denied under the provisions of this act, any citizen of the United States residing within this Commonwealth who is regularly and continuously engaged in cultivating the soil for general farm crop purposes, commercial truck growing, commercial orchards or commercial

nurseries, as either the owner or lessee or tenant of said lands, or as a member of the family or household or regularly hired help of such owner or lessee or tenant, shall be eligible to hunt and trap on said lands, including the woodlands connected therewith and operated as a part thereof, without a resident hunter's license . . . if such owner, lessee, tenant, member of the family or household or hired help resides in a dwelling situated upon the property so being cultivated and shall have continuously resided thereon and assisted in the cultivation of said land for a period of sixty or more days prior to the general open hunting or trapping season."

The second paragraph of the act provides that, with the written permission, the persons enumerated in the first paragraph might also hunt on the lands adjoining or immediately adjacent and connected with the said premises.

Under the Game Law of June 3, 1937, P. L. 1225, art. III, sec. 316, as amended, 34 PS §1311.316, it is provided, inter alia, that:

"It is unlawful for any person: . . .

"(i) After being denied the right to hunt or trap by action of the commission or a court, to hunt or trap anywhere within the Commonwealth during the period such right has been denied, with or without a hunter's license."

Section 318 of the said code provides, inter alia, that:

"For the purpose of this act, the fact that any person shall be found in possession of a gun, trap, or other device of any description useable for the purpose of killing or taking wild birds or wild animals, or in the possession of the dead body of any wild bird or wild animal, either in the field, in the forests, on the public highways, or on the waters of this Commonwealth, shall be considered 'prima facie evidence' that such

person is hunting, and shall require him at all times to display his license tag for the current year as provided in this article, and to show immediately, upon demand, his resident or nonresident hunter's license to any officer whose duty it is to protect the wild animals and birds, or to show his license immediately upon demand by any owner or lessee, or by any employe or representative of such owner or lessee, upon whose lands such person may be found."

Section 321 of the said code provides, inter alia, that:

". . . Any person who violates any of the provisions of this article except as above provided, shall, upon conviction, be sentenced to pay a fine of twenty dollars and costs of prosecution for each offense: Provided, That an additional fine of twenty dollars and costs of prosecution shall be imposed when any person is convicted of:

"(a) Hunting or trapping anywhere during any period of time that such right has been denied him by the commission, or by this act, and each day shall be considered a separate offense. . . ."

The last paragraph of this section provides that:

"Any person convicted of a second or subsequent offense shall be liable to the fines above provided and costs of prosecution, and in addition thereto shall, in the discretion of the court, suffer imprisonment one day for each dollar of fine imposed."

Now, applying the undisputed facts in this case to the foregoing sections of the Game Law, it becomes obvious that defendant's appeal is without merit, under the above-quoted sections giving certain persons the right to hunt without a license. Defendant fails to fall within that classification, because it is admitted he does not live on the farm of his father. Furthermore, the very first sentence of the act is prefaced by the provision that the act does not apply during the period that

a person's right to procure a license has been denied under the provisions of the act, and defendant admits that this privilege was suspended by the commission at the time of the alleged offense.

Under section 318, above quoted, the mere possession of a gun makes it prima facie evidence of intent to hunt, and this places the burden upon defendant to overcome this legal presumption.

The testimony of defendant was to the effect that he did alight from the truck carrying his rifle, and his companion, whom he called as a corroborating witness, definitely testified that defendant moved from the truck into a hedgerow along the edge of the field where he stood on watch during the drive for deer being made by others through a woodlot of an adjoining landowner.

Likewise, the argument of counsel for defendant that he had a right to carry a gun for the purpose of chasing trespassers from his father's land, and even to boldly assert that he had the right to shoot near their feet in order to scare them, is an act of taking the law into one's own hands that cannot be countenanced by the court and is certainly no defense for the charges here lodged against defendant.

The law of Pennsylvania affords defendant's father adequate legal means for the prosecution of trespassers on posted lands, and no other means is permissible. As we view the law under a prosecution for trespassing, all that is necessary is for the landowner to secure the hunter's license number or identity, and go before a justice of the peace and lodge an information.

It is, in our opinion, illegal for a person whose hunting license privilege had been suspended to carry a gun upon the farm of his father for the purpose of scaring off trespassers. Therefore, without further comment, we believe it is our duty under the facts of this case to adjudge defendant guilty, and, to this end, we enter the following:

*Order of Court*

And now, February 23, 1962, we adjudge defendant guilty and direct the district attorney to notify defendant to appear in open court for sentence on April 2, 1962, unless, in the meantime, said defendant shall have paid the costs of prosecution, and a fine of $40 to the Commonwealth of Pennsylvania for the use of the County of Columbia.